**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1810
_____

In re: ALLONHILL, LLC, f/k/a Allon Hill, LLC;  f/k/a Allon Financial, LLC;  f/k/a The
Murrayhill Company, LLC,
Debtor

_____

ALLONHILL, LLC
Appellee

v.

STEWART LENDER SERVICES, INC.,
Appellant

_____

Appeal from the United States District Court
for the District of Delaware
(Nos. 16-ap-50419, 14-10663, 1:19-cv-00879 & 1:19-cv-00938)
District Court Judge:  Leonard P. Stark

_____

Argued March 2, 2026
_____

Before: SHWARTZ, BIBAS, and PHIPPS, Circuit Judges.

(Filed: March 16, 2026)
_____

Evan T. Miller
Saul Ewing
1201 N Market Street
Suite 2300
Wilmington, DE

Pieter H.B. Van Tol, III [ARGUED]
Van Tol Law
199 8th Avenue
Brooklyn, NY 11215

      Counsel for Appellee

Nathaniel P. Bruhn
Andrew J. Gallo [ARGUED]
Michael K. Gocksch
Morgan Lewis & Bockius
One Federal Street
Boston, MA 02110

Kevin J. Mangan
Womble Bond Dickinson
1313 N Market Street
Suite 1200
Wilmington, DE 19801

James D. Nelson
Morgan Lewis & Bockius
1111 Pennsylvania Avenue NW
Suite 800 North
Washington, DC 20004

      Counsel for Appellant

_____

OPINION[*]

_____

SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

During its bankruptcy, Allonhill LLC initiated an adversary proceeding and brought a preference claim under 11 U.S.C. § 547(b) against Stewart Lender Services ("SLS") ("Preference Claim").  Because Allonhill was solvent when it transferred funds to SLS, the Preference Claim fails.  As a result, we will reverse and remand.

I

Allonhill was hired by Aurora Bank, FSB to review its foreclosure practices.  The contract between Allonhill and Aurora included a $2 million "Limitation on Liability" ("Liability Cap") for "claims arising out of th[eir] agreement," subject to exceptions not relevant here.  App. 981.  In 2012, Aurora learned that Allonhill had failed to disclose significant conflicts of interest and ended their relationship.  Allonhill then sued Aurora in Colorado state court for breach of contract for failure to pay Allonhill's outstanding invoices, and Aurora countersued for the return of the $24 million it had already paid, alleging, among other things, that Allonhill had defrauded Aurora and breached the parties' contract by failing to disclose conflicts of interest (the "Aurora Claim").  A bench trial was completed in 2013.

While the trial was ongoing that same year, SLS purchased almost all of Allonhill's assets, including all of Allonhill's accounts receivable, pursuant to an Asset Purchase Agreement ("APA").  The APA excluded any assets or liabilities that were the subject of the then-ongoing litigation between Allonhill and Aurora.  In accordance with the APA, Allonhill transferred to SLS approximately $6.6 million ("Transfers") over

3

three different dates between January 13, 2014, and February 18, 2014 ("Transfer Dates").

Less than one month after the last transfer, the trial court (1) found that Allonhill breached its contract and committed fraud, and (2) ordered Allonhill to pay Aurora almost $25.9 million in damages ("Initial Aurora Judgment"). Allonhill thereafter appealed the judgment and filed for bankruptcy. A bankruptcy confirmation plan was entered in 2015.[1]

While the bankruptcy was pending, the state appellate court vacated the Initial Aurora Judgment, held that the Liability Cap limited Aurora's damages to $2 million, and on remand the trial court entered a judgment in that amount in favor of Aurora ("Final Aurora Judgment"). Aurora appealed, but in 2018, the parties settled Aurora's claims for $2.05 million ("Settlement Amount").[2]

## B

During the bankruptcy, Allonhill filed an adversary proceeding and asserted the Preference Claim against SLS, alleging that the Transfers were improper preferences

---

[1] The confirmation plan explicitly referenced Allonhill's litigation with Aurora, Third Amended Plan of Reorganization, Bankr. Dkt. No. 551 at §§ 5.09, 11.10(a)-(b), and Allonhill explained in its disclosure statement that "success on the appeal may . . . render[] the Estate solvent," First Amended Disclosure Statement, Bankr. Dkt. No. 511, at 15.

[2] This amount also covered claims for interest and attorneys' fees.

under § 547(b).[3]  SLS asserted the defense that, because Allonhill was solvent on the Transfer Dates, the Transfers were not improper preferences.

In support of its solvency defense, SLS introduced expert testimony by a forensic accountant and corporate restructuring advisor who opined that Allonhill was solvent on the Transfer Dates based on an examination of Allonhill's post-sale balance sheet and related records.  Critical to this conclusion, the expert determined that the Aurora Claim was worth $2.05 million on the Transfer Dates based on (1) the $2.05 million Settlement Amount, (2) the $2 million Liability Cap, and (3) the fact that Allonhill had recorded the Aurora Claim on its December 31, 2013 balance sheet (before the Transfer Dates) at $2 million.  The expert opined that the Initial Aurora Judgment was an "errant judgment" that "doesn't affect what the claim really was worth as of the measurement date."  App. 573.  Allonhill did not present a solvency expert and instead argued that the Initial Aurora Judgment was the proper valuation for the Aurora Claim on the Transfer Dates because it was a "contemporaneous judgment" that was "close in time to the transfers at issue."  App. 662-66.

---

[3] Section 547(b) allows for the bankruptcy estate to recover a transfer that the debtor made to creditor within ninety days of filing a bankruptcy petition if, among other things, the debtor was insolvent on the date of the transfer.  11 U.S.C. § 547(b).  Section 547 "exists to prevent debtors from depleting the estate to pay favored creditors with assets that otherwise would have been apportioned among creditors according to the prioritization scheme of the Bankruptcy Code."  In re Am. Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007) (internal quotation marks omitted).

The case proceeded to trial, and the Bankruptcy Court denied Allonhill's Preference Claim because it found that the Aurora Claim should be valued at $2.05 million based on the expert's valuation and, as a result, Allonhill was solvent on the Transfer Dates, so the Transfers were proper. In re Allonhill, LLC ("Allonhill I"), No. 14-10663 (KG), 2019 WL 1868610, at *48-51 (Bankr. D. Del. Apr. 25, 2019), aff'd in part, remanded in part, No. 13-11482 (KG), 2020 WL 1542376 (D. Del. Mar. 31, 2020). Allonhill appealed, and the District Court concluded that Allonhill was insolvent on the Transfer Dates because the Aurora Claim should be valued "contemporaneously" based on the Initial Aurora Judgment of $25.9 million. In re Allonhill, LLC ("Allonhill II"), No. 13-11482 (KG), 2020 WL 1542376, at *8 (D. Del. Mar. 31, 2020). The District Court acknowledged that "one potential methodology would be to consider only the information available as of the Transfer Dates, and to value the liability based upon the likely outcome of the litigation given those facts," but it declined to consider this approach because "[n]either party argued for" it. Id. The District Court ultimately concluded that "Allonhill's contemporaneous method" was "based on evidence available near the time of the Transfers" and was the "more appropriate" method to value the Aurora Claim "[u]nder the circumstances" due to its "concern[] about the consequences of upsetting settled expectations" of the parties who had "ordered their affairs on the understanding that Allonhill was insolvent." Id. at *8-9.

Following remand to the Bankruptcy Court, the parties agreed to forgo other issues and file a direct appeal of the solvency ruling.

6

SLS appeals.

## II[4]

Under the Bankruptcy Code, insolvency is the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A). Under the "balance sheet test," courts determine the debtor's insolvency by tallying "[t]he debtor's assets and liabilities . . . at fair valuation to determine whether the corporation's debts exceed its assets," which would render the corporation insolvent. Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 648 (3d Cir. 1991), as amended (Oct. 28, 1991). The question before us is how to calculate the fair valuation of the Aurora Claim on the Transfer Dates under the balance sheet test.

To calculate the fair valuation of a claim for purposes of solvency, a court must determine whether the claim is disputed or contingent. A claim is disputed where all facts necessary to determine liability have occurred. See 2 Collier on Bankruptcy

---

[4] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a). The District Court had jurisdiction under 28 U.S.C. § 158(a)(1). This Court has jurisdiction under 28 U.S.C. § 158(d)(2). On appeal, "we stand in the shoes of the District Court and apply the same standard of review" which it was bound to apply, meaning that "[w]e review the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 844 (3d Cir. 2020) (internal citation omitted). "Whether a company is insolvent under the Bankruptcy Code is considered a mixed question of law and fact." In re Trans World Airlines, Inc., 134 F.3d 188, 193 (3d Cir. 1998); Amerada Hess Corp. v. Comm'r, 517 F.2d 75, 82 (3d Cir. 1975) (noting what "criteria" or "standard" to apply "in determining 'value'" is a question of law, but a "[c]ourt's determination of value, the proper standard having been applied by it, is a finding of fact" entitled to clear error review).

¶ 303.10 ("[W]hen the duty to pay does not rest upon a future event, the claim is not contingent."). A claim is contingent when the debtor's liability does not come into being until some future event occurs, even if the parties could have predicted it. In re Mallinckrodt PLC, 99 F.4th 617, 620 (3d Cir. 2024). This distinction matters because, when a claim is contingent, a court applies the no hindsight rule and cannot rely on anything that occurred after the transfer date to assess the value of the claim. In re R.M.L., Inc., 92 F.3d 139, 156 (3d Cir. 1996) (explaining that to evaluate a contingent claim, "a court looks at the circumstances as they appeared to the debtor and determines whether the debtor's belief that a future event would occur was reasonable" and does not rely on "'hindsight' or 'post-hoc' analysis").

No party challenges the Bankruptcy or District Court's treatment of the claim here as disputed. This is not surprising because the events giving rise to the liability had occurred, and the subsequent issuance of a judgment does not change that. See, e.g., In re Bradley, No. 07-14607BF, 2008 WL 4065810, at *6 (Bankr. E.D. Pa. Aug. 26, 2008) ("Generally, the pendency of a judicial ruling does not render a claim contingent within the meaning of the Bankruptcy Code."). As to valuation of the disputed claim, the parties presented two valuation options: the $25.9 million judgment the Colorado state trial court entered or the $2.05 million settlement (including interest and attorney's fees) after the appellate court's ruling enforcing the $2 million contractual liability cap. In addition, the record included the testimony from an expert who opined that the latter was the best assessment of the fair valuation.

There are several methods to value a claim,[5] including the one the Bankruptcy Court selected, namely valuing the claim based upon the final judgment. There is caselaw that supports this choice, so we cannot say the Bankruptcy Court's selection constitutes an error of law given the record before it. In re Turner & Cook, Inc., 507 B.R. 101, 109 (Bankr. D. Vt. 2014) ("[A] court may permissibly use the judgment amount in valuing the contingent[6] liability at the time of the transfers."); In re Imagine Fulfillment Servs., LLC ("IFS"), 489 B.R. 136, 150 (Bankr. C.D. Cal. 2013) (holding that "the full amount of the Judgment," which was entered before the transfer and was pending appeal, should be considered in solvency analysis), aff'd, 2014 WL 3867531 (B.A.P. 9th Cir. Aug. 6, 2014) ("IFS II");[7] S.E.C. v. Antar, 120 F. Supp. 2d 431, 443 (D.N.J. 2000) (determining solvency in a fraudulent transfer case based on the dollar amount of the

---

[5] Allonhill relies on In re Advanced Telecommunication Network, Inc., 490 F.3d 1325 (11th Cir. 2007) ("ATN"), to argue that the Settlement Amount was not the proper valuation of the Aurora Claim. While ATN held a settlement amount was not the value of a pending claim under the balance sheet test, that conclusion was based on the determination that the claim was "a prototypical contingent liability." 490 F.3d at 1335. Because the court considered the claim contingent, it applied the no hindsight rule and "calculate[d] the present value of the liability—the expected cost of the liability times the estimated chance of it ever occurring." Id. Here, in contrast, Allonhill does not argue that the Aurora Claim is contingent, and as discussed above, it is not.

[6] Although the court used the word "contingent," this appears an inartful choice of words, as it used hindsight to calculate the value of the claim at the time of the transfer. In re Turner & Cook, 507 B.R. 101, 109 (Bankr. D. Vt. 2014).

[7] The B.A.P. rejected the argument that "the state court judgment must be discounted based on the Debtor's opinion of success on appeal"—where no subsequent appellate decision or settlement had been reached—because "the amount of a noncontingent debt . . . is the amount of the claim itself." IFS II, 2014 WL 3867531, at *5. Here, an appellate decision and subsequent settlement confirm that the Initial Aurora Judgment was not the correct valuation of the Aurora Claim.

9

SEC's unliquidated claims on the relevant date, as reflected in the amount "ordered by [the] court" on a later date), aff'd, 44 F. App'x 548 (3d Cir. 2002); In re Pilavis, 233 B.R. 1, 7-8 (Bankr. D. Mass. 1999) (valuing disputed claim based on "hindsight from" a judgment after the transfers); see also In re W.R. Grace & Co., 281 B.R. 852, 868 (Bankr. D. Del. 2002) (noting that the valuation of a claim and thus a debtor's solvency at the time of the transfer is "to be corrected to reflect the evidence").[8]

Furthermore, the Bankruptcy Court did not commit clear error in relying on the Settlement Amount as a factual basis to conclude both that the value of the disputed claim was $2.05 million and, given Allonhill's assets on the Transfer Dates, Allonhill was solvent when the transfers were made. Therefore, the Bankruptcy Court properly sustained SLS's solvency defense to the Preference Claim.

### III

For the foregoing reasons, we reverse the District Court and remand with directions to vacate its ruling and further remand the case to the Bankruptcy Court.

---

[8] Like the parties in W.R. Grace, Allonhill knew it had a potential liability, but the value of which was informed by evidence from after the transfers. 281 B.R. at 868.